UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　　　Plaintiff,<br>　v.<br>DALE SCOTT HEINEMAN,<br>　　　　Defendant. | No. CR 05-00611 WHA<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## INTRODUCTION

Defendant is charged with three violations of the terms of his supervised release. After an evidentiary hearing, this order finds the violations proven.

## PROCEDURAL HISTORY

In 2007, a jury convicted defendant Dale Scott Heineman guilty of one count of conspiracy to commit mail fraud and 34 counts of mail fraud, all perpetrated by a "mortgage elimination" scam. He served his time and is now on supervised release.

In July 2024, United States Probation filed an amended Form 12 charging defendant with three violations of the terms of his supervised release: (1) failure to pay the restitution and special assessment imposed by the amended judgment, (2) failure to submit monthly supervision reports for the months of February, March, April, May, June, and July 2024, and (3) failure to report to the probation office as instructed (Dkt. No. 902).

The parties fully briefed the issue, and two evidentiary hearings were held. Defendant appeared *pro se*, refusing offers of counsel. The undersigned heard live testimony from Probation Officers Rafael Lopez and Cecil McCarroll, and Assistant General Counsel for the Federal Reserve Bank of Richmond Keith Goodwin. Several exhibits were admitted, as recorded in the trial log (Dkt. No. 907). All declarative statements herein are factual findings.

**FINDINGS OF FACT**

In 2004, defendant Dale Scott Heineman and his co-defendant Kurt Johnson perpetuated a bogus "mortgage elimination" scheme wherein they told struggling homeowners that they could eliminate their mortgages, took thousands of dollars from those that fell for the scam, submitted phony paperwork to lenders and county recorder's offices, and led their victims to believe that their debts had been eliminated. *United States v. Heineman*, No. C 05-02730 WHA, Dkt. No. 374 (N.D. Cal. Aug. 19, 2008). Many victims stopped making mortgage payments. Some reversed course after receiving notices of default from their banks, others stuck with defendant's "process" and lost their homes. Banks, too, were victims in ways that need not be summarized here.

Defendant was indicted, found guilty of one count of conspiracy to commit mail fraud and 34 counts of mail fraud, and sentenced to 260 months of imprisonment and five years of supervised release. The amended judgment also imposed monetary penalties: a $3,500 special assessment and $512,911.63 in restitution, for a total of $516,411.63 (Dkt. No. 656). The judge imposed the restitution obligation during a June 2008 determination of restitution hearing, at which defendant was present (Dkt. No. 654). Defendant got credit for a $375 payment towards the special assessment while in custody. At the time of the evidentiary hearing, he still owed $3,125 in special assessments and $512,911.63 in restitution.

Defendant began supervised release in April 2023. Probation Officer Cecil McCarroll has supervised him since then. Defendant and Officer McCarroll had a series of in-person and telephone discussions in the year between defendant's release and the amended Form 12,

including in April, May, June, October, and November of 2023, and February, April, and June of 2024.

Over the course of those discussions, Officer McCarroll informed defendant of his restitution and special assessment obligations, repeatedly asked him to begin making payments toward his penalties, and emailed him the amended judgment reflecting those penalties. Defendant confirmed receipt of the amended judgment the day it was sent. At every turn, however, defendant told Officer McCarroll that he did not owe any restitution, that he had already paid his special assessment, that the judgment against him was void, and so on. Defendant did not make any payments after his release. As of the date of the evidentiary hearing, defendant had paid just $375 toward the $516,411.63 owed, despite receiving roughly $1,700 in monthly income and government benefits.

The two also discussed standard condition two of defendant's supervised release, which requires him to report to his probation officer and submit a truthful and complete written report to that officer within the first five days of each month. Defendant stopped submitting reports in January 2024. During a meeting in April, Officer McCarroll instructed defendant to submit his reports. He did not. The same admonition was delivered during a June 17 home inspection, again to no effect.

Finally, during the June 17 home inspection, Officer McCarroll instructed defendant to report for a drug test the next day. He did not.

\*       \*       \*

During the evidentiary hearing, defendant insisted that he had, in one fell swoop, paid the entirety of the $516,411.63 owed.

On October 3, 2022, our Clerk's Office did in fact receive a "check" ("instrument," in defendant's terms) for $516,411.63, made out to our district court and signed by defendant. The "check," reproduced below, purported to draw upon funds held in a Federal Reserve Bank of Richmond account controlled by defendant (Exh. 2). Defendant conceded that he mailed the "check."

3

```
DRAWN ON FEDERAL RESERVE BANK ACCOUNT
MONEY ON ACCOUNT ORDER
UNCITRAL

Public Corporate Transaction                                Date: September 28, 2022
Routing Number: 0510-0003-3                                 No.: DSH-280922-MO

Pay to the order of UNITED STATES DISTRICT COURT – NORTHERN DISTRICT – SAN FRANCISO DIVISION (Payee) $ 516,411.63
five hundred sixteen thousand four hundred eleven and 63/100 ———— Dollars

Charged/Drawn on Account #: E34044477                       DALE SCOTT HEINEMAN
(Drawee) RICHMOND FEDERAL RESERVE BANK                      Routing Number: 0510-0003-3
Passed Through EIN Account: 57-1339668                      Recommended: IRS of the Support Division
                                                            C/O The Treasury UCC Contract Trust
                                                            Department of The Treasury
DALE SCOTT HEINEMAN®TM FAMILY ESTATE TRUST    ORIGINAL      1500 Pennsylvania Avenue NW
                                              ISSUE         Washington, DC 20220

Memo: for Case No.: DCAN305CR000611;
      Party Number 001; Party Code: CANA014888;    (Drawer) Dale Scott Heineman
      Account Code: CANAPACCT2046                           Principal Owner            Good as Aval
                                                   VOID WHERE PROHIBITED BY LAW
v3.0
```

The next day, a deputy clerk logged the "check," deemed it "not legitimate," recorded a total amount received of $0, and returned the "check" to defendant, alongside a letter explaining that the "check" could not be processed because it did not have a MICR (Exh. 6). The deputy clerk's letter instructed defendant to "make the necessary corrections" and "send a check with MICR at the bottom" (*ibid*.).

The deputy clerk got it right: defendant's "check" was bogus.

The Federal Reserve Bank of Richmond, one of twelve regional banks that constitute the Federal Reserve System, supervises banks in Maryland, Virginia, North Carolina, South Carolina, the District of Columbia, and most of West Virginia. It, like its eleven sister banks, issues paper currency, lends to banks, facilitates payments between banks, and acts as a depository for bank reserves. The Federal Reserve Banks, Richmond included, *cannot* and *do not* provide accounts or services to private individuals or trusts, Dale Scott Heineman and the "Dale Scott Heineman ® ™ Family Estate Trust" included.

Neither defendant nor his purported trust have or had an account at the Federal Reserve Bank of Richmond. Neither defendant nor his purported trust are or were authorized to draw upon *any* account located at the Federal Reserve Bank of Richmond. The specific account number listed on defendant's "check" – E34044477 – does not correspond to any existing

4

account at the Federal Reserve Bank of Richmond. The "check" bears no resemblance to a legitimate financial instrument and is of defendant's own creation. It is yet another scam by defendant.

## ANALYSIS

To revoke a defendant's supervised release, a district court must find by a preponderance of the evidence that a defendant violated a condition of supervised release. *Johnson v. United States*, 529 U.S. 694, 700 (2000) ("Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt.")

### 1. CHARGE ONE: FAILURE TO PAY RESTITUTION AND PENALTIES.

Defendant failed to pay the restitution and special assessment imposed by the amended judgment, in violation of special condition three of his supervised release. The schedule of payments requires that "payment [is] to begin immediately" (Exh. 3 at 9). As of July 27, 2024, defendant had paid only $375 of the $516,411.63 owed, despite receiving roughly $1,700 in monthly income and government benefits.

Defendant argues that his "check" was a valid "instrument for restitution" (Dkt. No. 905). The "check," however, was a sham: neither defendant nor his purported trust have an account with the Federal Reserve Bank of Richmond, neither he nor his trust are authorized to draw upon the funds held by that institution, and the specific account listed – E34044477 – does not exist. The Clerk's Office (correctly) recognized the "check" as illegitimate and returned it to defendant.

Defendant next asserts that the "instrument" was "executed" when it was stamped by the mail intake clerk. That argument fails. The Guide to Judiciary Policy Section 320.30(d) requires that "[a]ll checks, money orders, or other negotiable instruments must be restrictively endorsed immediately by the first person handling these items." The mail clerk's stamp did just that. Nothing in the Uniform Commercial Code, liberally invoked by defendant, helps him.

5

He continues: the clerk's letter *rejecting* the sham check and directing defendant to submit a valid one constituted "this courts [*sic*] receipt of discharge" (Dkt. No. 905). Wrong. The letter rejecting defendant's "check" was just that: a rejection. It identified that the "check" sent by defendant did not constitute an acceptable form of payment. The Clerk was under no obligation to accept defendant's sham "check."

All of the above has been tried before. In *United States v. Banks*, the defendant sent the court a "certified promissory note" for $97,308.69, "proffered under the Uniform Commercial Code" as payment for defendant's restitution, fines, and assessments, the Clerk's Office returned the document to the defendant as required by the Guide to Judiciary Policy, and the defendant claimed that his debt had been discharged. No. CRIMI. 04-176, 2007 WL 3165532 (W.D. Pa. Oct. 26, 2007), *aff'd*, 269 F. App'x 152 (3d Cir. 2008). There, too, Judge Joy Conti rejected the ploy.

Finally, defendant asserts that "the [Federal Reserve] account was verified as debited" (Dkt. No. 905). There is no evidence of such a transaction, defendant argues, because "the employees of Northern District Court of California . . . have misappropriated or absconded with the funds from the Trust account" (*ibid*.). This argument also fails. The dearth of evidence of any transaction or employee misconduct is easily explained: there was no transaction, and there was no misconduct besides defendant's own.

Defendant offers three documents in support of the validity of his "check" – the first, a printout of a webpage from "VersaCheck Pay," the second, a printout of an Ally Bank customer service message that defendant describes as a "verification" from Ally Bank, and the third, a printout defendant describes as a "verification" from "www.routingnumber.com." The first was not admitted into evidence during the hearing, while the second and third were filed on the docket three weeks after that hearing. They are not in evidence and need not be considered. Even if they were in evidence, they are not convincing.

*First*, defendant claims that "VersaCheck Pay" is an "independent check processing company that has verified the account and the routing number" listed on the sham "check," as evidenced by a webpage that defendant printed out at home. Upon closer inspection, what

6

defendant has printed out is a *sign-up* page, where he punched in his alleged account information, and was being prompted to enter credit card information to purchase various services (and optional add-ons, such as a UV light, or printer) from VersaCheck Pay (Dkt. No. 905 at 23). Nothing verifies any of the information entered by defendant.

*Second*, defendant asserts that Ally Bank has "verified" the account information as "valid," again evidenced by way of a printout (Dkt. No. 912 at 29). Defendant claims that the printout "shows an *inquiry* . . . [to] Ally Bank, where the account number 034044477 and routing number 051000033, together, is confirmed as valid" (*id*. as 4) (emphasis added). Not so. What defendant has provided is a *response* from an Ally Bank employee confirming that "*the routing number and the account number* . . . are valid" (*id*. at 29) (emphasis added). Defendant has *omitted* the *inquiry* containing the routing and account numbers in question. It is impossible to know what is being "validated."

*Third*, defendant asserts that "a free online look-up service www.routingnumber.com" has deemed "the routing number 051000033 and account number 034044477 . . . Valid" (*id*. at 4). As an initial matter, nothing ties the provided image to www.routingnumber.com: the document is tightly cropped and bears no indicia of source (*id*. at 32). Moreover, what little of the page that *is* provided does not say what defendant claims it does. The anonymous page states that the publicly available *routing* number used by the Federal Reserve Bank of Richmond is "valid." With regards to the account number defendant attributes to his Treasury account, the document is silent as to validity, stating only only that the "account number format is correct."

Defendant has severely mischaracterized all three documents, and none support his case.

The stark contrast between defendant's assertions and this order's findings deserves further explanation.

Defendant appears to be a "sovereign citizen" or "redemptionist." They are anti-government individuals that share a set of common beliefs. "Sovereigns" argue "that the existing American governmental structure, including the courts . . . is illegitimate and that they, the sovereign citizens, retain an individual common law identity exempting them from the

7

authority of those fraudulent government institutions."  Michael Crowell, *A Quick Guide to Sovereign Citizens*, UNIV. OF N.C., CHAPEL HILL ADMINISTRATION OF JUSTICE BULLETIN, (Nov. 10, 2013).

    Adherents of this conspiracy identify themselves as trustees and executors for trusts, and intersperse copyright symbols, hyphenation, all capitals, and other bizarre punctuation in their names. *Ibid*.  For example, defendant styles himself "Executor-Dale-Scott-Heineman," and his "trust" the "DALE SCOTT HEINEMAN ® ™ FAMILY TRUST ESTATE."  Sovereigns use red ink to "avoid any liability in our judicial system." *Ibid*.  When defendant writes a letter to the Court, for example, he retains the "original subscribed in red ink" (Dkt. No. 319). Sovereigns place their zip code in brackets and insert "near" as part of an address "[t]o further avoid inadvertent submission to the false government."  Crowell, *A Quick Guide to Sovereign Citizens*.  Defendant, for example, lists his Nevada address as "Near Clark County [89104]." Sovereigns invariably demand that judges and other officials "produce their oaths." *Ibid*. Defendant has made that demand of the undersigned.  Sovereigns believe that the illegitimate government swapped common law for admiralty law, and that the latter governs all manner of proceeding.  Defendant has filed several "statements of interest in admiralty," and has asserted that "ALL documents will be submitted to the United States Navy, Judge Advocate General's Office" (Dkt. No. 912 at 100).  Sovereigns are likewise fixated on the Uniform Commercial Code, which they believe is binding law that trumps both federal caselaw and statute.  Crowell, *A Quick Guide to Sovereign Citizens*.  In the last few months alone, defendant has filed dozens of motions and notices, sometimes as many as five a day, all relying on impenetrable interpretations and page-long quotations of the Uniform Commercial Code.  Defendant's opposition in the present Form 12, for example, insists that "The Uniform Commercial Code and the California Commercial Code govern in this instant action."

    Many sovereign citizens are adherents of "assemblies," "juries," and other groups that lay claim to the mantle of the United States government. *Ibid*.  Defendant, for example, is an adherent of the "Unified United States Common Law Grand Jury."  In 2015, the "Grand Jury Administrator" attempted to enter a "Default Judgment Coram Ipso Rege" in this matter (Dkt.

8

No. 823). Therein, the anonymous "administrator" declared himself "arbiter . . . [and] enforcer of the law," determined that this Court "failed to prove [its] jurisdiction," granted defendant and his co-defendant "habeas," and ordered that "Magistrate Judge William Haskell Alsup . . . abate at law all proceedings" and immediately release them both (*id*. at 2-8). Luckily for "defendants" (the undersigned included), the Grand Jury Administrator declined to award damages, costs, or attorney's fees (*id*. at 1). The law applied by the Grand Jury Administrator included the Magna Carta, "the wisdom of Seneca," private letters exchanged between Justice Oliver Wendell Holmes and Sir Frederick Pollock (misspelled "Pottock" throughout), and the Federal Rules of Civil Procedure, "insofar as it is not repugnant to the common law." The "Grand Jury" has frittered away significant judicial resources via phony lawsuits and filings in federal and state courts across the country. *Unified United States Common Law Grand Jury v. Manglona*, No. 1:2016-mc-00034, Dkt. No. 2 at 3 (D. N. Mar. I. 2023) (collecting cases).

Relevant here, sovereigns believe that when the United States abandoned the gold standard in 1933, it began to pledge the "strawman" of its citizens as collateral for the country's national debt. Crowell, *A Quick Guide to Sovereign Citizens*. To facilitate this collateralization of the national debt, each citizen is split in two at birth: the "real person," often called the "living soul" or "flesh and blood," is represented by a person's name in "English" (*e.g.*, "John Doe"), while the "legal fiction," or "strawman," is represented by a person's name in all capitals (*e.g.*, "JOHN DOE"), as on a birth certificate (the instrument through which the government first creates the strawman, they argue). *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 210 (D. Conn. 2010) (Judge Mark Kravitz).[*]

Judge Dennis Hubel summarized the Treasury account scam as follows:

> Redemptionists believe that [their strawmen] have been placed as collateral in bond for the security of the United States Department of the Treasury and have been placed on the rolls of the International Monetary Fund (IMF) in lieu of the national debt. Redemptionists assign an imaginary account number to some

---

[*] When he was first indicted, defendant moved to dismiss the case against him because the indictment, which sometimes formatted his name "DALE SCOTT HEINEMAN," did not identify him, "Dale Scott Heineman" the person, but a "cestui que trust" (Dkt. No. 86).

9

>sort of direct treasury account, advocate that this direct treasury account has a balance equal to the monetary value the government places on the life of an individual, and then charge against this direct treasury account through the use of fraudulent checks.

*Ray v. Williams*, No. CV-04-863-HU, 2005 WL 697041, at *5 (D. Or. Mar. 24, 2005), *report and recommendation adopted*, No. CV 04-863-HU, 2005 WL 1429907 (D. Or. June 16, 2005), *aff'd*, 234 F. App'x 570 (9th Cir. 2007) (internal quotation marks and citations omitted).

"[T]hose who understand this theory – and who file the appropriate UCC financing statements, and thereby become a free sovereign, a process known as 'redemption' – never have to actually pay for anything." *McLaughlin*, 726 F. Supp. 2d at 210 (cleaned up). There are as many idiosyncrasies as there are adherents – some believe that each treasury account contains exactly $630,000, others lay claim to millions, others still assert that their personal treasury accounts are bottomless – but the general theory is held in common. Crowell, *A Quick Guide to Sovereign Citizens*.

"Executor-Dale-Scott-Heieneman," who identifies himself as the "living soul," asserts that such an account was "created by the Federal Reserve of Richmond specifically for DALE SCOTT HEINEMAN" (the "strawman," as indicated through capitalization) (Dkt. No. 905 at 9). Defendant's "check" attempted to draw on his strawman account, while his subpoena to the Treasury for records of the account attempted to prove its existence. The government complied with that subpoena. Unsurprisingly, there were no records, just as there was no Treasury account in defendant's name, capitalized or otherwise.

"Some people believe with great fervor preposterous things that just happen to coincide with their self-interest . . . . The government may not prohibit the holding of these beliefs, but it may penalize people who act on them." *Coleman v. Comm'r*, 791 F.2d 68, 69 (7th Cir. 1986). Sovereign citizens have asserted these and related conspiracies for decades. *See, e.g., United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993); *United States v. Orrego,* No. 04 CV 0008 SJ, 2004 WL 1447954, at *2 (E.D.N.Y. June 22, 2004); *Monroe v. Beard*, 536 F.3d 198, 203 n. 4 (3d Cir. 2008). They, and their attendant "instruments," "special trust deposits," "writs," "notices of default," and so forth, have been rejected every time. This order does the

10

same. The "check" defendant mailed to our Clerk's Office was, like his mortgage-elimination scheme, a sham. Charge One has been proven.

2. **CHARGES TWO AND THREE: FAILURE TO SUBMIT MONTHLY REPORTS AND FAILURE TO FOLLOW PROBATION'S INSTRUCTIONS.**

Charge Two asserts that defendant failed to submit truthful and complete written reports within the first five days of each month from February to July 2024, in violation of standard condition two of his supervised release. At the time of the evidentiary hearing, defendant had not submitted a monthly report since January 2024.

Charge Three asserts that defendant failed to follow the instructions of his probation officer, in violation of standard condition three. On June 17, Officer McCarroll instructed defendant to report to the probation office the next day for a drug test. He did not.

Charges Two and Three have been proven.

\*          \*          \*

Defendant's briefing is packed with miscellaneous requests for relief. For example, defendant asserts that Keith Goodwin, Assistant General Counsel at the Federal Reserve Bank of Richmond, is "a third-party interloper," and his "testimony should be stricken entirely" (Dkt. No. 913 at 5). Officer McCarroll's testimony, meanwhile, should be stricken because "he stipulated to being forever barred by and through the Doctrine of Ladders and Laches and Acquiescence, Estoppel, by Res Judicata, ab initio, nunc pro tunc by and through the chain certification method, 28 C.F.R. Rule 44, and from any further action regarding this instant matter" (*id*. at 9-10). Per defendant, Attorney General Merrick Garland and United States Attorney Ismail Ramsey, among others, have stipulated to the same. Defendant goes on to demand that Officer McCarroll be "remov[ed] from office" pending "a full military hearing by and through *Marbury v. Madison*, 5 U.S. 137 (1803)" (Dkt. No. 912 at 99). These request, and all other requests made in defendant's various written submissions, wherever they appear, are **DENIED**.

\*          \*          \*

11

On May 15, 2024, defendant filed a "notice of demand for production of records by and through subpoena duces tecum" seeking the following:

> Treasury records for account number 0004611, and include both sides of the T-ledger-assets and liabilities, from the UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO account number above; and include the debit account records for 034044477 routing number and 051000033 and both sides of the T-ledger-assets and liabilities for the date of October 3, 2022

Dkt. No. 883 at 2. The "notice" containing the subpoena request was one of four notices defendant filed that day, and some eighteen notices, memoranda, letters, and tenders filed in approximately a month-long period, totaling hundreds of pages. The filing was not readily recognized as a subpoena request, and neither the government nor the Court took timely action. That "failure" to honor defendant's subpoena came to light during the July 24 evidentiary hearing. At the hearing, the government agreed to deem the subpoena served, and the undersigned set a further evidentiary hearing on September 3 to allow defendant an opportunity to obtain and review any relevant evidence. The government promptly conveyed defendant's subpoena to the Office of the General Counsel at the Treasury (Dkt. No. 910). A Treasury Department employee swore that he conducted a diligent search for the records and found that none existed (Dkt. No. 910-1). In light of the government's compliance and the absence of any new evidence, the undersigned notified the parties that the September 3 hearing would serve as an opportunity to deliver closing arguments.

\*         \*         \*

Defendant has repeatedly attempted to derail this Form 12 proceeding. A one-page order, filed on August 28, reminded the parties of the in-person hearing scheduled for September 3 (Dkt. No 914). On August 30, defendant filed a "NOTICE OF INTERLOCUTORY APPEAL, AUTOMATIC STAY . . . BY AND THROUGH 11 U.S.C. 362(a)(6)," wherein he falsely claimed to be appealing that scheduling order "with leave of the court," and declared the present matter "automatically stayed" pursuant to Chapter 11 of the Bankruptcy Code (Dkt. No. 915). A September 2 order certified the appeal as frivolous and retained jurisdiction (Dkt.

12

No. 918). On September 3, defendant re-filed his "notice of interlocutory appeal," modified to include the September 2 certification as a ground for appeal (Dkt. No. 919). That, too, was certified as frivolous (Dkt. No. 920). The day after (September 4), plaintiff filed a "notice for cease and desist upon appeal" directed to his probation officer, demanding that the latter abide by the Chapter 11 "automatic stay" (Dkt. No. 924). That "notice," like the prior two, was frivolous.

On September 5, while the Court prepared these written findings, defendant filed suit against the undersigned, Attorney General Merrick Garland, United States Attorney Ismail Ramsey, and several Assistant United States Attorneys. *Heineman v. Alsup, et al.*, No. 24-cv-06207-WHO (N.D. Cal.). That suit is another frivolous attempt to derail this Form 12 proceeding.

As an initial matter, "[a] judge is not disqualified by a litigant's suit or threatened suit against him." *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986).

Moreover, the contents of the complaint, when they are comprehensible, are entirely frivolous. For example, defendant states in his complaint:

> Petitioner/Complainant, one of the "We-the-People" of the Original Estate *is* the Original Creator/Executor/Employer and *is* the United-States-of-America, and *is* the Original Creator/Settlor/Executor for this Constitution/Charter/Trust/Contract wherein "We-the-People" have privity of that Great Charter/Trust/Contract and does enjoy: *all* immunities from *all* acts of Congress, *all* Codes of Federal Regulations, and *all* administrative/executive orders, and *all* policies by and through the Articles of Confederation, 7 STAT-13, Northwest Territorial Ordinance #1 and the Constitutions, 1-STAT-50 by Res judicata.

*Heineman*, No. 24-cv-06207-WHO (Dkt. No. 1 at 5) (all emphasis and errors in original). Having established that he "*is* the United-States-of-America," defendant then clarifies that he is "*not* a 'person' as defined by the Supreme Court of the United States." *Id*. at 6 (emphasis in original).

13

Defendant's complaint brings 87 "counts." 58 of those "counts" relate to an "order" issued by the Court on March 18, 2018. There are two candidates. The first order filed on that day is reproduced in full here:

> Over the course of this prosecution, the Court has been generous in extending resources to defendants in custody to allow them to defend themselves. This was done because defendants declined counsel and have been and remain in custody. The case is now over at the district court, but defendants move "to maintain the status quo for defense supplies used for trial during the tenure of appeal" (Br. 1). Defendants, however, have abused these supplies. The abuses have been categorized in earlier stages of this case and will not be repeated here. Now that sentencing has occurred, this order terminates all of the resources previously made available to defendants, including the computers, printers, allied equipment, the legal assistant, and all else. The marshals and the Bureau of Prisons shall promptly remove these resources.
>
> This order, of course, is without prejudice to defendants seeking resources from the Court of Appeals. In this regard, however, the undersigned recommends that the Court of Appeals be careful in light of the history of abuse and install safeguards to police abuse, if any resources are to be provided.

(Dkt. No. 591). One example of such abuse is that defendant and his codefendant used those resourced to forge an order bearing the signature of the district judge purporting to release them from prison. The second "order" filed that day was the minute order of defendant's sentencing (Dkt. No. 619). Defendant's lawsuit is not a valid means of challenging a sentence imposed by a district court.

Elsewhere in his new complaint, defendant alleges that he has been discriminated against "based on [his] national origin . . . by and through built-in-systems-headwind-systematized discrimination," and that such discrimination has rendered him "disabled" within the meaning of the Americans with Disabilities Act. *Heineman*, No. 24-cv-06207-WHO (Dkt. No. 1 at 27).

Finally, on September 9, defendant filed a "Notice for Demand for Proof of Jurisdiction Regarding Case Number 05-cr-00611 WHA by and through Federal Rules of Civil Procedure Rule 12(h)(3), Basso v. Utah Power and Light Company 495 F.2d 906 (10th Cir. 1974), as Affidavit." Therein, he argues that "no evidence appears in the judgment roll that this Court

14

ever possessed jurisdiction of the parties or subject matter jurisdiction; from the time of indictment," that the undersigned's "failure to provide proof of jurisdiction shall be construed as [his] admission that this court lacks personum [*sic*] and subject matter jurisdiction," and that "from bark to core this entire judicial proceeding was a farce." This filing is, like the others, without merit and does not deserve extended discussion. This order does note that FRCP 12(h)(3) is inapposite – this is a criminal proceeding. Fed. R. Crim. P. 60(b), also invoked by defendant, is likewise inapplicable – that rule concerns the rights of *victims*, not convicted defendants.

In sum, these latest attempts to forestall the conclusion of the pending Form 12 are, like the others, wholly frivolous, and will not be allowed to gum up the works of justice.

## CONCLUSION

After an in-person evidentiary hearing and in-person closing argument, this order finds Charges One, Two, and Three, as alleged in the amended Form 12, proven by a preponderance of the evidence. Sentencing will occur on **OCTOBER 22, 2024, AT 2 PM**, in person, in San Francisco, 450 Golden Gate Avenue, Courtroom 12, 19th floor.

**IT IS SO ORDERED.**

Dated: September 11, 2024.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE